IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| JOHN CARFORA, SANDRA PUTNAM, and JUAN GONZALES (aka Gonzalez) individually and as representatives of a class of similarly situated individuals, <br><br> *Plaintiffs*, <br><br> v. <br><br> TRUSTEES OF DARTMOUTH COLLEGE, <br><br> *Defendants*. | Misc. No. _____ <br><br> **UNDERLYING ACTION PENDING** <br><br> *Carfora v. Tchrs. Ins. & Annuity Ass'n of Am.*, No. 1:21-CV-8384-KPF (S.D.N.Y.). |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL THE TRUSTEES OF DARTMOUTH COLLEGE TO COMPLY WITH RULE 45 SUBPOENA *DUCES TECUM***

**Contents**

Introduction ........................................................................................................................ 1
Background ....................................................................................................................... 2
    I.   Factual Allegations of the Underlying Action ................................................ 2
    II.  Factual & Procedural Background with Respect to the Subpoena ................. 4
Argument ........................................................................................................................... 6
    I.   Dartmouth's process, or lack thereof, for monitoring TIAA's cross-
        selling during the entire time period is relevant. ........................................... 6
    II.  The Subpoena is not unduly burdensome. ...................................................... 9
Conclusion ....................................................................................................................... 10

## INTRODUCTION

Plaintiffs John Carfora, Sandra Putnam, and Juan Gonzales, individually and as representatives of a class of similarly situated individuals (the "Plaintiffs"), move pursuant to Rules 37 and 45 of the Federal Rules of Civil Procedure and the United States District Court for the District of New Hampshire Local Rule 37.1, to compel the Trustees of Dartmouth College ("Dartmouth") to produce documents in compliance with Plaintiffs' subpoena *duces tecum* dated February 10, 2025 (the "Subpoena").

The documents sought are directly relevant to allegations (which the underlying court has already found plausible to withstand a motion to dismiss) that certain retirement plan sponsors breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") by failing to monitor the imprudent and disloyal cross-selling efforts of Teacher's Insurance & Annuity Association of America and TIAA-CREF Individual & Institutional Services, LLC (collectively, "TIAA" or "Defendants").

Dartmouth has not identified any undue burden or other objection to the Subpoena that would justify prohibiting discovery of highly relevant information. Whether the responsive documents demonstrate that Dartmouth breached its fiduciary duties by allowing TIAA to engage in unfettered cross-selling to participants, or Dartmouth instead took actions to monitor, restrict, and oversee TIAA's cross-selling consistent with its fiduciary duties, the documents are relevant to the allegations at issue in the underlying case.

1

## BACKGROUND

### I. Factual Allegations of the Underlying Action

The underlying action commenced on October 11, 2021. *TIAA*, ECF No. 1.[1] Plaintiffs, individually and on behalf of a proposed nationwide class of all participants in TIAA-recordkept defined contribution retirement benefit plans during the proposed class period, allege that TIAA knowingly participated in breaches of fiduciary duty by the sponsors of those plans in violation of ERISA. *See Carfora v. Tchrs. Ins. & Annuity Ass'n of Am.*, 631 F. Supp. 3d 125 (S.D.N.Y. 2022) ("*TIAA 1*"), *reconsideration granted in part*, No. 21-8384, 2023 U.S. Dist. LEXIS 148435 (S.D.N.Y. Aug. 21, 2023) ("*TIAA II*"); *Carfora v. Tchrs. Ins. & Annuity Ass'n of Am.*, 2024 U.S. Dist. LEXIS 97679 (S.D.N.Y. May 31, 2024) ("*TIAA III*").

Plaintiffs are current participants in ERISA-governed defined-contribution retirement plans sponsored or administered by their employers, almost all of which are educational institutions. *TIAA III*, 2024 U.S. Dist. LEXIS 97679, at *3. TIAA "contracts with the Plan Sponsors['] plans to provide administrative services, including recordkeeping for the Plan Sponsors, as well as investment-related services." *Id*. at *3–4. TIAA's services to plans include "assembling TIAA-affiliated investment options in which plan participants van invest, as well as individual advisory services for plan participants." *Id*. at *4 (internal quotation marks omitted) (alteration adopted).

---

[1] Citations to the docket in the underlying action are styled as "*TIAA*, ECF No. __." The case is pending before the Hon. Katherine Polk Failla in the United States District Court for the Southern District of New York and is styled, *Carfora v. Tchrs. Ins. & Annuity Ass'n of Am.*, No. 21-CV-8384-KPF (S.D.N.Y.).

2

At the heart of the dispute are Plaintiffs' allegations concerning TIAA's heavy focus "on individual advisory services," which "are the most lucrative of its ERISA-related service offerings." *Id*. Chief among these individual advisory services is TIAA's "Portfolio Advisor," "a managed account program that places the plan participant in a model portfolio that often include[s] TIAA-affiliated funds, and proposed ongoing investment advice that rebalances the assets if the account deviates from the model portfolio allocation by a certain amount." *Id*. Because of this conduct, Plaintiffs, including a proposed nationwide class, "paid multiple layers of fees charged by the underlying funds in the portfolio, as well as a variable asset-based management fee charged by TIAA Services." *Id*. at *4–5.

TIAA effectuated an effective "cross-selling" scheme whereby it incented its wealth management advisors and financial consultants to sell non-plan TIAA products and services, including Portfolio Advisor, to Plan participants at TIAA recordkept organizations and institutions across the country. *See id.* at *5–7. This scheme caused TIAA to reap "a 20-fold increase in its annual revenues generated from assets rolled over to Portfolio Advisor," with revenues increasing "from $2.6 million to $54 million in the period from 2013 to 2018." *Id.* at *7.

Had plan sponsors discharged their statutorily defined ERISA duties adequately, they "would have identified the cross-selling activities" that Plaintiffs allege to be unlawful. *Id*. at *9. Among other things, prudent plan sponsors would have required TIAA to issue corrective disclosures to mitigate problematic elements of TIAA's cross-selling scheme; alternatively, prudent plan sponsors would have

3

reevaluated TIAA's compensation as a service provider to their ERISA plans to account for TIAA's significant plan-related revenue stream. *Id.* As a result, internal plan sponsor communications concerning TIAA's scheme—to the extent that they exist and are presently within a plan sponsor's possession, custody, or control—are directly relevant and essential to proving Plaintiffs' claims in the underlying action.

## II. Factual & Procedural Background with Respect to the Subpoena

On February 19, 2025, Plaintiffs caused the Subpoena to be served on Dartmouth. *See* Declaration of Patrick R. Kutz ("Kutz Decl.") ¶¶ 2–3; Ex. 1; Ex. 2. Per the Subpoena's instructions, documents produced by Dartmouth "shall be subject to the Protective Order that governs this Action (ECF No. 88 (enclosed)) and produced in accordance with the provisions of the ESI Stipulation (ECF No. 87)." Ex. 1, Instructions ¶ 7; *see also* Ex. 4 (the "Protective Order").

Dartmouth served its objections to the Subpoena on March 12, 2025. *See* Kutz Decl. ¶ 6; Ex. 5 (the "Objections"). Plaintiffs' counsel met and conferred with counsel for Dartmouth on March 21, 2025. Kutz Decl. ¶ 7; Ex. 6. During the meeting, Plaintiff's counsel reiterated that the Protective Order would apply to all documents produced and offered to narrow the time frame of the Subpoena. Dartmouth's counsel expressed a willingness to reconsider previous objections. *Id*; Kutz Decl. ¶ 9; Ex. 7. Plaintiffs' counsel offered to confer regarding Dartmouth's objections, Kutz Decl. ¶ 10; Ex. 8, and offered more information regarding the relevancy of documents sought by the Subpoena, as well as search terms to aid in Dartmouth's discovery. Kutz Decl. ¶ 11; Ex. 9.

4

Counsel for both parties met again on May 16, 2025, where counsel for Dartmouth said that Dartmouth expected to complete a search for responsive documents within the next week. Kutz Decl. ¶ 12; Ex. 10. Three weeks later, on June 3, 2025, Plaintiff's counsel followed up requesting an update. Kutz Decl. ¶ 14; Ex. 11. Plaintiffs' counsel and counsel for Dartmouth met again on June 17, 2025, but no agreement was reached. Kutz Decl. ¶ 15.

Plaintiffs' counsel requested an update from Dartmouth on July 1, 2025. Kutz Decl. ¶ 16; Ex. 12. On July 3, 2025, counsel for Dartmouth reported that (a) Dartmouth was not willing to produce any documents within the six-year limitations period, as Plaintiff Carfora was no longer a participant in the Dartmouth plan during that time; and (b) Dartmouth would produce earlier documents from when Carfora was still a participant (between October 1, 2014, and September 11, 2015), but only "if Plaintiffs agree not to attempt to obtain documents from outside of that period." Ex. 11.

Counsel for both parties met again by phone on July 9, 2025. Kutz Decl. ¶ 17; Ex. 13. Despite their good faith efforts, no resolution could be reached. Plaintiffs' counsel informed counsel for Dartmouth that a motion to compel would be forthcoming, and counsel for Dartmouth consented to have the motion transferred to the Southern District of New York. Kutz Decl. ¶ 17; Ex. 13.

After a lengthy meet-and-confer process, the parties have now reached an impasse. Kutz Decl. ¶¶ 18, 19.

5

# ARGUMENT

The Court should order Dartmouth to comply with Plaintiffs' Subpoena. Dartmouth's process, or lack thereof, for monitoring TIAA's cross-selling is relevant, and the Subpoena is not unduly burdensome. The existing Protective Order in the underlying action also addresses Dartmouth's privacy and confidentiality concerns.

## I. Dartmouth's process, or lack thereof, for monitoring TIAA's cross-selling during the entire time period is relevant.

Federal Rule of Civil Procedure 45 allows subpoenas to be issued to non-parties seeking certain documents or electronically stored information. *See* Fed R. Civ. P. 45(a)(1)(D). "Rule 45 subpoenas may be enforced if they seek nonprivileged information that is relevant to a claim or defense and proportional to the needs of the case, in light of factors set forth in rule 26(b)(a). *Rowell v. Vissa*, No. 19-419-JL, 2022 U.S. Dist. LEXIS 243727, at *4 (D.N.H. Apr. 8, 2022) (citing *Green v. Cosby*, 152 F. Supp. 3d 31, 34 (D. Mass. 2015)).

Here, the materials sought—documents regarding Dartmouth's process, or lack thereof, for monitoring TIAA's cross-selling for the entire proposed time period—are relevant to Plaintiffs' claims. The proposed Class in the underlying action is defined as

> All participants of defined contribution plans subject to ERISA who (i) initiated a rollover of assets from the participant's individual plan account to any non-plan product or service affiliated with TIAA or TIAA Services at any time between January 1, 2012 and the date of judgment, (ii) for which a TIAA Services Wealth Management Advisor received credit toward an annual variable bonus under TIAA's incentive compensation plan. Excluded from the class are participants of any plan sponsored by TIAA or its affiliates.

6

Ex. 3, ¶ 157 (the "Second Amended Complaint"). The court in the underlying action has held that the Second Amended Complaint plausibly alleges that certain plan sponsors breached their fiduciary duties by failing to monitor TIAA's cross-selling. *TIAA III*, 2024 U.S. Dist. LEXIS 97679, at *9.

Plaintiffs allege that TIAA engaged in predatory cross-selling tactics across all the plans for which it served as recordkeeper, and plan fiduciaries did not do enough to monitor and restrict TIAA's cross-selling. *See id*. Plaintiffs have plausibly alleged that sponsors of the plans recordkept by TIAA, including Dartmouth, were obligated to "mitigate problematic elements of TIAA's cross-selling campaign" or "potentially reevaluate TIAA's compensation … to account for this significant plan-related revenue stream." *Id*.

Dartmouth does not dispute that its plan or plans were recordkept by TIAA. Nor does it dispute that participants rolled plan assets out to TIAA products. Therefore, Dartmouth's process, or lack thereof, for monitoring TIAA's cross-selling activities is relevant to Plaintiffs' allegations that plan sponsors "were unaware of TIAA's cross-selling campaign, and took no action to address its problematic elements," *id*. at *8, and that plan sponsors did not "determine the amount of TIAA's cross-selling revenues, thereby preventing them from making an informed assessment of whether the total sum of TIAA's plan-related compensation was reasonable for the services provided." TIAA, ECF No. 71, ¶137; Ex. 3 ¶ 137.

The existence of documents reflecting Dartmouth's fiduciary process with respect to TIAA's cross-selling activities is directly relevant to the claims in this

7

case. Either the records will show that Dartmouth recognized TIAA's predatory practices and took some protective measures in aid of plan participants—evidencing to some degree the fiduciary standard of care—or else Dartmouth will have no such records—evidencing a fiduciary failure. In either case, Plaintiffs are "entitled to inquire." *CSX Transp., Inc. v. ABC&D Recycling, Inc.*, No. 11-30268, 2016 U.S. Dist. LEXIS 152664, at *13–14 (D. Mass. Nov. 3, 2016).

Dartmouth contends that the records sought are irrelevant because Plaintiff Carfora left the Dartmouth plan before the statute of limitations began to run. But Plaintiffs have plausibly alleged "a multi-year campaign of cross-selling" committed by Defendants on "an institutional scale" across thousands of ERISA plans. *See TIAA*, ECF No. 78 at 18, 24–25. In other words, the misconduct alleged in the Second Amended Complaint "implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants" across all TIAA plans. *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012). Dartmouth's records are therefore relevant to proving Plaintiffs' class-wide claims, as they would shed light on both the nationwide practices of TIAA and the responses of plan fiduciaries like Dartmouth during the limitations period. Indeed, it was for this very reason that the district court overseeing the underlying action imposed an extended discovery period, recognizing that the parties' claims and defenses would "require significant third-party discovery related to the alleged breaches of fiduciary duties by thousands of defined contribution plans." *TIAA*, ECF No. 82 at 5.

8

## II. The Subpoena is not unduly burdensome.

The scope of the Subpoena and the burdens on Dartmouth are not unreasonable. Because the requested information is relevant, it is Dartmouth's burden to prove that compliance would be burdensome. "The party resisting the subpoena 'bears the burden of showing that the subpoena imposes an undue burden, and it cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance.'" *Saucedo v. Gardner*, No. 17-183-LM, 2017 U.S. Dist. LEXIS 223162, at *9 (D.N.H. Oct. 27, 2017) (quotation and internal quotation marks omitted). Demonstrating undue burden requires "affirmative and compelling proof." *Id.* (quoting *Ameritox, Ltd. v. Millennium Labs, Inc.*, No. 12-7492, 2012 U.S. Dist. LEXIS 177809, at *2 (N.D. Ill. Dec. 14, 2012)).

Dartmouth has offered no more than a "theoretical concern about the burden" imposed by reviewing and producing documents throughout the given time period, which "does not suffice." *Id.* "Boilerplate language that discovery is 'overbroad and unduly burdensome' is insufficient to meet the 'burden of showing by affidavit or otherwise that [discovery] would be unduly burdensome." *Katz v. Liberty Power Corp., LLC,* No. 18-10506, 2020 U.S. Dist. LEXIS 112969, at *18 (D. Mass. June 26, 2020) (*quoting Cooper v. Charter Commc'ns, Inc.*, No. 12-10530, 2016 U.S. Dist. LEXIS 3651, at *5 (D. Mass. Jan. 12, 2016)). Boilerplate, generalized objections are "inadequate and tantamount to not making any objection at all." *HealthEdge Software, Inc. v. Sharp Health Plan*, No. 19-11020, 2021 U.S. Dist. LEXIS 88061, at *11 (D. Mass. May 5, 2021) (citation omitted).

9

While it is true that "a non-party is given consideration regarding inconvenience and expense," *Demers v. LaMontagne*, No. 98-10762, 1999 U.S. Dist. LEXIS 17500, at *5 (D. Mass. May 5, 1999), there is no indication that providing documents reflecting Dartmouth's relationship with and monitoring of TIAA's actions would be burdensome. Indeed, Dartmouth has not identified any undue burden to date. *See* Ex. 5. The Subpoena contains two document requests, both directly relevant to Plaintiffs' claims and materials that should be readily available in Dartmouth's fiduciary file, if they exist. Ex. 1 at 9 (requesting documents related to TIAA's cross-selling and the plan's recordkeeping contracts with TIAA). Additionally, Plaintiffs offered to limit the scope of the Subpoena's relevant time period to run from 2014 through 2020, *see* Kutz Decl.¶ 7, a substantial concession given that the proposed Class Period commences on January 1, 2012, and runs through the date of judgment. *TIAA*, EC No. 71 ¶ 157.

## CONCLUSION

For these reasons, the Court should order Dartmouth to comply with the Subpoena.

Dated: July 17, 2025						Respectfully submitted,

<div style="margin-left: 2em;">

*/s/ Nicholas G. Kline*
Nicholas G. Kline, Esq. #268422
Shaheen & Gordon P.A.
353 Central Avenue, 2nd Floor
Dover, NH 03820
(207) 650-9096
nkline@shaheengordon.com

*Local Counsel for Plaintiffs*


SCHLICHTER BOGARD LLC

By: /s/ Joel D. Rohlf
Joel D. Rohlf, Mo. Bar No. 67540
Patrick R. Kutz, Mo. Bar. No. 66023
100 South Fourth Street, Ste. 1200
Saint Louis, Missouri 63102
Telephone: (314) 621-6115
Facsimile: (314) 621-5934
jrohlf@uselaws.com
pkutz@uselaws.com

*Counsel for Plaintiffs Individually & as Representatives of the Proposed Class*

</div>

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 17, 2025, I caused the foregoing to be served on the Trustees of Dartmouth College in accordance with Federal Rule of Civil Procedure 4, or via email with the consent of counsel for the Trustees of Dartmouth College.

.

                                          */s/ Nicholas G. Kline*
                                          Nicholas G. Kline